

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER HALL, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Civil Action No. 07-S-484-NW** |
| **PAUL WHITE, and PHYLLIS THOMAS,** | ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION

Plaintiff, Jennifer Hall, formerly worked as an hourly-wage employee in the Russellville, Alabama poultry processing plant originally owned by Gold Kist, Inc., but subsequently acquired by Pilgrim's Pride Corporation. She commenced this action "on behalf of herself and all other persons *legally authorized to be employed in the U.S.* who have been employed at all Gold Kist and Pilgrim's Pride Facilities nationwide, as hourly wage earners in the last four years."[1] She sued Paul White, Operations Manager of the Russellville poultry processing plant, and Phyllis Thomas, Complex Manager at that same facility. Hall alleges that these two defendants are part of a nationwide conspiracy comprised of "other current and former Gold Kist and

---

[1] Doc. no. 1 (complaint) ¶ 9 (emphasis supplied).

Pilgrim's Pride facility human resources personnel" who agreed to depress the amount paid hourly-wage workers by "knowingly employing large numbers of illegal immigrants, likely more than 500 in the last four years alone."[2]  Plaintiff's claims are based on the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961-1968 (1971) (amended 1996).

RICO was enacted as Title IX of the Organized Crime Control Act of 1970[3] for the purpose of seeking "the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."  Pub. L. 91-452, 84 Stat. 923 (1970).[4]  In addition to criminal sanctions, *see* 18 U.S.C. § 1963(a),[5]

---

[2] *Id*. ¶ 2; *see also id*. ¶¶ 23, 30.

[3] *See* Pub. L. 91-452, Title IX, 84 Stat. 941-48 (1970).

[4] Congress included the following statement of its findings and purposes for enacting the Organized Crime Control Act:

The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability fo the nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic

Congress provided that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).

This opinion addresses defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.[6]  *See* Fed. R. Civ. P. 12(b)(6).

## I.  STANDARD OF REVIEW

Generally speaking, when considering a motion to dismiss for failure to state a claim, district courts must "accept all well-pleaded facts as true, and all reasonable

---

security, and undermine the general welfare of the Nation and its citizens; and (5) organized crime continues to grow because of defects in the evidence-gathering process fo the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear on the unlawful activities of those engaged in organized crime and because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact.

It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.

Pub. L. 91-451, 84 Stat. 922-23 (1970).

[5] 18 U.S.C. § 1963(a) provides, in part, that "[w]hoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment). . . ."  The statute also contains extensive forfeiture sanctions. *See id.* §§ 1963(a)(1) – (a)(3).

[6] *See* doc. no. 9.

3

inferences therefrom are construed in the light most favorable to the plaintiff." *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001); *see also*, *e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*).

Rule 12(b)(6) motions test the "facial sufficiency" of a plaintiff's statement of her claims for relief. *Brooks v. Blue Cross & Blue Shield of Florida*, 116 F.3d 1364, 1368 (11th Cir. 1997). For that reason, the motion should be "read alongside" Federal Rule of Civil Procedure 8(a), *id.*, which requires only that a complaint contain "a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Brooks*, 116 F.3d at 1368 (observing that a Rule 12(b)(6) motion to dismiss "is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity"). Thus, as the Supreme Court recently observed in *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007), "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id.* at 1964 (citing, *e.g.*, *Sanjuan v. American Board of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (holding that "complaints need not contain elaborate factual recitations. They are supposed to be succinct.")).

4

Even so, the *Twombly* Court also observed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65 (citations omitted, alteration in original); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, when ruling upon a 12(b)(6) motion to dismiss for failure to state a claim, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Instead, the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citations omitted); *see also*, *e.g.*, *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688 (1973) (observing that pleadings "must be something more than an ingenious academic exercise in the conceivable"); *Marsh*, 268 F.3d at 1037 (same); *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (holding that a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal

theory").[7]  Stated differently, the plaintiff must plead enough facts to "nudge[] [her] claims across the line from conceivable to plausible."  *Twombly*, 127 S. Ct. at 1974.

## A.  Are RICO Claims Subject to Heightened Pleading Requirements?

At least one commentator has opined that the *Twombly* decision, which addressed an alleged conspiracy to violate federal antitrust statutes, foreshadows heightened pleading requirements for civil RICO conspiracy claims:

> *Twombly* will make would-be antitrust plaintiffs think twice before asserting conspiracy theories without conspiracy facts.  *The case should have the same deterrent effect in similar complex cases where conspiracy may be an element of the claim*, *such as* securities fraud and *civil RICO*.  Other "sprawling, costly, and hugely time-consuming" cases — which is how the Supreme Court characterized the *Twombly* claim — that require involved showings of proof, for instance mass torts and discrimination class actions, will also feel the *Twombly* bite.

Andrée Sophia Blumstein, *A Higher Standard*, 43 Tenn. B. J. 12, 15 (2007) (emphasis supplied).  In that regard, it *is* well-settled within the Eleventh Circuit that, when the "racketeering activities" alleged by a civil RICO plaintiff are predicated upon acts of *fraud*, the plaintiff must plead such predicate acts with the same particularity required by Federal Rule of Civil Procedure 9(b).[8]  *See*, *e.g.*, *Ambrosia Coal & Construction*

---

[7] *But cf. Watts v. Florida International University*, 495 F.3d 1289, 1295 (11th Cir. 2007) (stating that "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of [the] facts [alleged] is improbable'") (quoting *Twombly*, 127 S. Ct. at 1965) (bracketed text supplied).

[8] In pertinent part, Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).

*Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (fraudulent inducement); *Byrne v. Nezhat*, 261 F.3d 1075, 1109-10 (11th Cir. 2001) (mail fraud); *Republic of Panama v. BCCI Holdings* (*Lux.*), 119 F.3d 935, 949 (11th Cir. 1997) (wire fraud); *Brooks*, 116 F.3d at 1380-82 (mail and wire fraud); *Durham v. Business Management Assocs.*, 847 F.2d 1505, 1511-12 (11th Cir. 1988) (securities fraud); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1251.1 n.13 (citing cases finding that fraud-based RICO claims must comply with Rule 9(b)).

On the other hand, as one judge within the Northern District of Georgia observed, "the Eleventh Circuit has not yet addressed whether the heightened pleading requirement of Rule 9(b) applies to RICO causes of action *premised on non-fraud predicate acts*," and "some ambiguity [therefore] exists as to whether the particularized pleading requirements of Rule 9(b) apply in *all* RICO actions." *Williams v. Mohawk Industries, Inc.*, 314 F. Supp. 2d 1333, 1343 (N.D. Ga. 2004) (Murphy, J.) (emphasis supplied) (holding that, "where a predicate act does not sound in fraud, the plaintiff asserting a RICO claim need only comply with the general pleading requirements of Rule 8(e)(1), rather than the heightened pleading requirements of Rule 9(b)"), *aff'd in part, rev'd in part on other grounds*, 465 F.3d 1277 (11th Cir. 2006).  *Compare Taylor v. Bear Stearns & Co.*, 572 F. Supp. 667, 682 (N.D. Ga. 1983) ("It seems, however, to this court at least that there are many

7

sound reasons for requiring that, like fraud, [RICO] must be pled with particularity.") *and Helicopter Support Systems*, *Inc. v. Hughes Helicopters*, *Inc.*, No. 83-1450-Civ.-T-15, 1984 WL 3238, at *1 (M.D. Fla. June 22, 1984) (same) *with Planned Parenthood of Columbia / Willamette*, *Inc. v. American Coalition of Life Activists*, 945 F. Supp. 1355, 1380 n.25 (D. Or. 1996) (finding Rule 9(b) inapplicable where predicate acts are extortion and coercion) *and United States v. International Brotherhood of Teamsters*, 708 F. Supp. 1388, 1395-96 (S.D.N.Y. 1989) ("This court is not persuaded by the reasoning of the courts that have applied Rule 9(b) to RICO actions not sounding in fraud, and adopts the reasoning of courts that limit the application of Rule 9(b) to fraud based RICO claims.") *and United States v. Bonanno Organized Crime Family of LaCosa Nostra*, 683 F. Supp. 1411, 1426-27 (E.D.N.Y. 1988) (finding "no basis for extending the reach of Rule 9(b) to all RICO cases").

Those courts holding that Rule 9(b) applies in *all* civil RICO actions reason that such heightened pleading requirements are appropriate in light of the *in terrorem* effect of a RICO claim,[9] and the need to put RICO defendants on clear notice of the

---

[9] The First Circuit has referred to RICO actions as "an unusually potent weapon — the litigation equivalent of the thermonuclear device." *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir. 1991). *See generally* Paul A. Batista, *Civil RICO Practice Manual* § 1.1, at 1-3 (3d ed. 2008) (stating that, by 1985, civil RICO actions had become "the weapon of choice for civil plaintiffs who perceived in the broad language of the statute a means for articulating novel or creative claims and for escalating the potential for the litigation equivalent of terror — the availability of treble damages").

claims against them.  *See*, *e.g.*, *Taylor*, 572 F. Supp. at 682 ("First, the mere invocation of the statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute. Second, the concepts within the statute are so nebulous that if the cause of action were only generally pled, a defendant would have no effective notice of a claim showing that the pleader is entitled to relief.").

Regardless of whether one speaks of the level of review to be applied to the present Rule 12(b)(6) motion in terms of a "heightened pleading standard," or in the language of the *Twombly* opinion, *supra*, this court holds that civil RICO claims should be reviewed "with particular scrutiny," *City of New York v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 546 (S.D. N.Y. 2005), "due to their potential for abuse by civil litigants." *Bill Buck Chevrolet v. GTE Florida, Inc.*, 54 F. Supp. 2d 1127, 1132 (M.D. Fla. 1999) (internal quotations and citation omitted).  *See also Doxie v. Ford Motor Credit Co.*, 603 F. Supp. 624, 628 (S.D. Ga. 1984) (recognizing the need for "strict adherence to the technical requirements for a civil RICO claim because the statute is a relatively specific one").

## II.  FACTS

Because this court must accept the allegations of plaintiff's complaint as true, the following recitation of "facts" for Rule 12(b)(6) purposes may not be the actual facts. *See Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006); *see also Marsh v. Butler County*, 268 F.3d 1014, 1023 n.2 (11th Cir. 2001) (*en banc*) ("A trial or other proceeding might show the actual facts to be different from the allegations set out here as 'facts.'").

Plaintiff is an American citizen who was legally employed as an hourly-wage worker in the Russellville, Alabama poultry processing plant previously owned by Gold Kist, Inc., but now owned by Pilgrim's Pride Corporation.[10]   Significantly, neither Gold Kist nor Pilgrim's Pride are named as defendants; instead, plaintiff sued only Paul White, Operations Manager of the Russellville poultry processing plant, and Phyllis Thomas, Complex Manager at that same facility.  As previously noted, plaintiff alleges that these two defendants are part of a nationwide conspiracy comprised of "*other* current and former Gold Kist and Pilgrim's Pride facility *human resources* personnel" who agreed to depress the amount paid hourly-wage workers

---

[10] *See* doc. no. 1 (complaint) ¶ 4.  Plaintiff alleges that Pilgrim's Pride assumed control of the Russellville poultry processing plant and other Gold Kist facilities nationwide in January of 2007, after completing an acquisition of Gold Kist.  *See id.* ¶ 2 & n.1.

10

by "knowingly employing large numbers of illegal immigrants, likely more than 500 in the last four years alone."[11]

Plaintiff's complaint contains very few factual assertions, but alleges a number of *beliefs*. For example, plaintiff alleges that she

> *believes* . . . Defendants [White and Thomas] have approved the following hiring criteria at the Russellville facility, which subvert the law against hiring illegal immigrants and effectively turn a blind eye to factors which any reasonable employer would know indicate job applicants are unauthorized for employment in the U.S.: 1) hiring workers who cannot speak English while claiming to be U.S. Citizens or Lawful Permanent Residents; 2) hiring workers who are recent arrivals to the U.S. and claim to be U.S. Citizens or Lawful Permanent Residents; 3) hiring workers who present authorization documents which are invalid on their face because the pictures are of a different person, are upside down, are on poor quality paper, etc.; 4) hiring workers who are personally known to the Facility's hiring staff to be in the U.S. illegally and are using false documents; 5) hiring workers who have previously been employed at the Facility under different identities. A majority of the Facility's hourly workforce falls into one or more of these categories.

> 19.  Plaintiff *believes* these hiring practices are in place at all the facilities of both companies and are perpetrated by the Defendants' co-conspirators, the other HR Managers and corporate HR executives who set the policies and depressed wage level for the Class.

> 20.  Paul White is Operations Manager of the Russellville Facility. As Operations Manager, *he personally has approved* the hiring

---

[11] *Id.* ¶ 2 (emphasis supplied); *see also id.* ¶¶ 23, 30. The incongruity between the upper-management positions occupied by the named defendants, and the allegation that they are among "other . . . human resources personnel" employed by Gold Kist and Pilgrim's Pride, has been noted, but not yet resolved.

policies identified above.  Additionally, he works at the Russellville Facility on a daily basis and *observes* the largely illiterate, Spanish-speaking, illegal workforce.  *He knows* most of these people are not U.S. citizens or lawful permanent residents, i.e., they are ineligible for employment.  *He knows* that Gold Kist and Pilgrim's Pride are committing a massive immigration law conspiracy in order to maintain this workforce.

21.   Phyllis Thomas is the Complex manager at the Russellville Facility.  As Complex manager, *she personally has instructed her staff* on how to implement the hiring policies identified above.  For example, *she has personally instructed her staff* to rehire workers at the Russellville Facility even though she had knowledge that these workers were previously hired to work at the Russellville Facility under different identities.  *She also reprimanded her staff* that they were "looking at the papers too closely" when she believed too few illegal immigrants were being hired.

22.   Many others are part of the conspiracy to facilitate the Scheme.  *White and Thomas directed the Russellville Facility's human resources personnel* to implement the Scheme by turning a blind eye to the fact that workers who claim to be U.S. citizens or lawful permanent residents cannot speak English and are using false and stolen identity documents.  Additionally, *White has directed his staff* to arrange for free temporary room and board for the illegal immigrant workers at local motels.  *He has also directed his staff* to provide transportation for illegal immigrant workers between their homes and work.

Doc. no. 1 (complaint) ¶¶ 17, 19-22 (all emphasis supplied) (boldface headings omitted).

## III.  DISCUSSION

Generally speaking, RICO § 1962(c) makes it unlawful for any person associated with an enterprise to conduct, or to participate in conducting, the affairs

of an "enterprise" through a "pattern of racketeering activity," and sub-section (d) of the same section makes it unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of § 1962. *See* 18 U.S.C. § 1962.

In turn, RICO § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). That language indicates that there are three, essential components of a civil RICO claim: *i.e.*, a plaintiff must show (1) that she was injured in her business or property (2) as a proximate result of (3) the defendants' violation of 18 U.S.C. § 1962. *See*, *e.g.*, *Commercial Cleaning Services v. Colin Service Systems*, 271 F.3d 374, 380 (2d Cir. 2001) (holding that a RICO plaintiff "must plead (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation"). As will be seen, however, the apparent simplicity of these basic components of a civil RICO claim masks a great deal of complexity. *See Elliott v. Foutas*, 867 F.2d 877, 880 (5th Cir. 1989) (characterizing this sort of straightforward summarization as "deceptively simple").

For example, 18 U.S.C. § 1962(c) — the RICO provision generally declaring that "[i]t shall be unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" — does not itself define the acts that constitute "racketeering activities." Instead, RICO § 1961(1) defines that term by adopting substantive offenses that are codified elsewhere — criminal offenses that are referred to in the case law construing RICO as "predicate offenses."[12] In reflection of the fact that "the major purpose" of RICO "is to address the infiltration of legitimate business by organized crime," *United States v. Turkette*, 452 U.S. 576, 591 (1981), RICO itself is principally concerned with the organizational structure through which (*i.e.*, an "enterprise"), and the number of instances in which (*i.e.*, a number sufficient to constitute "a pattern"), persons violate the incorporated "predicate offenses" (*i.e.*, RICO's "racketeering activities").

Here, plaintiff alleges that defendants violated 18 U.S.C. § 1962(d) by conspiring to conduct or manage a § 1962(c) RICO "enterprise" that was engaged in a "pattern of racketeering activities" predicated upon violations of section 274 of the

---

[12] RICO takes aim at so-called "racketeering activity," a phrase that the Act defines as any act "chargeable" under several generically described *state* criminal laws, and any act "indictable" under numerous, specific, *federal* criminal provisions, as well as any "offense" involving bankruptcy, securities fraud, or drug-related activities that is "punishable" under federal law. *See* 18 U.S.C. §§ 1961(1)(A) – (G). Those criminal provisions are referred to in the case law construing RICO as "predicate offenses" (or, sometimes, "predicate acts"). *See, e.g.*, *Sedima*, 473 U.S. at 495 (stating that "'racketeering activity' consists of no more and no less than commission of a predicate act") (citing 18 U.S.C. § 1961(1)).

14

Immigration and Nationality Act, incorporated by reference in RICO § 1961(1)(F):

*i.e.*, 8 U.S.C. §§ 1324(a)(1)(A)(iii) (making it unlawful to knowingly harbor or

conceal illegal aliens), and 1324(a)(3)(A) (making it unlawful to knowingly employ

ten or more illegal aliens within a twelve-month period).[13]  *See*, *e.g.*, *Beck v. Prupis*,

529 U.S. 494, 506 (2000) (stating that, to prove a violation of 18 U.S.C. § 1962(d),

plaintiff must show that defendants (1) knowingly and willfully joined a conspiracy

(2) with the purpose of violating 18 U.S.C. § 1962(c)).

When all of the requirements discussed above are parsed into their constituent

parts, it can be seen that plaintiff must allege the following facts in order to state a

*prima facie* case for violation of RICO sections 1962(d) and (c) that will survive

defendants' Rule 12(b)(6) motion to dismiss:   *i.e.*, plaintiff must allege (and

ultimately prove) that (*i*) two or more persons (*ii*) employed by or associated with (*iii*)

an enterprise (*iv*) engaged in, or the activities of which affect, interstate or foreign

commerce (*v*) knowingly and willfully conspired to conduct or to participate in the

affairs of the enterprise through (*vi*) a pattern (*vii*) of racketeering activities

predicated upon knowing violations of those sections of the Immigration and

---

[13] RICO § 1961(1) specifies the criminal acts that constitute "racketeering activity," and states that the term includes "any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain. . . ." 18 U.S.C. § 1961(1)(F).

Nationality Act referenced above;[14] and that (*viii*) both she and the members of the putative class suffered injury to their "business or property" (*ix*) as a proximate result of the racketeering activities (predicate offenses) committed by defendants.[15]  *See generally Eleventh Circuit Pattern Jury Instructions — Civil*, Federal Claims Instruction 5.1 (2005).  These necessary allegations are discussed in the following sections.

A.    ***persons employed by an enterprise engaged in interstate commerce***

RICO defines the term "person" as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), while "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Here, plaintiff alleges that defendants Paul White and Phyllis Thomas — the Operations Manager and Complex Manager, respectively, of the poultry processing facility at which she was employed — are the "persons" guilty of hiring and harboring illegal aliens at the Russellville, Alabama plant, while the non-

---

[14] *See Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993) (stating that, to prove a violation of 18 U.S.C. § 1962(c), plaintiff must show that defendants (1) conducted or participated in (2) the activities of a RICO enterprise (3) through a pattern (4) of racketeering activity); *see also*, *e.g.*, *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) ("A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.").

[15] *See*, *e.g.*, *Beck v. Prupis*, 529 U.S. at 505-06 (stating that a civil RICO plaintiff also must prove both an injury to her "business or property" and that such injury was "by reason of" the defendants' violation of the RICO "predicate offenses" alleged by plaintiff).

party, corporate entities, Gold Kist and Pilgrim's Pride, are alleged to jointly comprise the alleged RICO "enterprise."[16]

The crucial element for purposes of federal jurisdiction, and the one that empowered Congress to enact the RICO statutes in the first place,[17] is the fourth: a plaintiff must show that the RICO enterprise was engaged in, or that its activities affected, interstate or foreign commerce. *See* 18 U.S.C. § 1962(c). Here, plaintiff alleges that Gold Kist and Pilgrim's Pride are engaged in activities affecting interstate commerce.[18]

Defendants do not dispute that plaintiff has adequately pled the existence of two RICO "persons" who are employed by an alleged RICO "enterprise," or that the enterprise is engaged in interstate commerce.

## B.    *conspiracy*

It is well-established that RICO's conspiracy provision, § 1962(d), "must be interpreted in light of the traditional understanding of the term 'to conspire.'" *Goren*

---

[16] Plaintiff actually addresses each corporate entity as a separate enterprise — *see* doc. no. 1 (complaint) ¶ 28 ("The Gold Kist enterprise existed from the beginning of the class period until January 2007.") and ¶ 29 (The Pilgrim's Pride Enterprise exists from January 2007 through the present.") — but, for convenience, this court treats both as comprising a single RICO enterprise.

[17] *See* U.S. Const., art. I, § 8 ("The Congress shall have power . . . To regulate commerce with foreign nations, and among the several states, and with the Indian tribes; . . . .").

[18] Doc. no. 1 (complaint) ¶¶ 28-29.

17

*v. New Vision International, Inc.*, 156 F.3d 721, 731 (7th Cir. 1998) (citing *Salinas v. United States*, 522 U.S. 52, 63 (1997)).

In that regard, the term "conspiracy" generally is defined as an "[a]n *agreement by two or more persons to commit an unlawful act*, coupled with an intent to achieve the agreement's objective, and . . . action or conduct that furthers the agreement." *Black's Law Dictionary* 329 (8th ed. 2004) (emphasis supplied).  As the emphasized words in that definition imply, "the essence" of a criminal conspiracy is the "agreement to commit an unlawful act."  *Iannelli v. United States*, 420 U.S. 770, 777 (1975) (citations and footnote omitted).[19]  For that reason, the law traditionally has considered the conspiracy, and the unlawful act that is the agreed-upon objective of the conspiracy, to be separate crimes.  *Id*.

> Unlike some crimes that arise in a single transaction, the conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act.  Thus, it is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end.  Indeed, the Court has even held that the conspiracy can be punished more harshly than the accomplishment of its purpose.

---

[19] In the omitted footnote, the Supreme Court characterized the agreement to commit an unlawful act as the "essential evil at which the crime of conspiracy is directed," and stated that such an agreement "remains the essential element of the crime").  *Iannelli*, 420 U.S. at 777 n.10.  *But see United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998) (observing that "the essential element of a conspiracy [is] that the object of the conspiracy must be illegal").

*Id*. at 777-78 (citations and footnote omitted).  *See also*, *e.g.*, *Eleventh Circuit Pattern Jury Instructions — Criminal*, Offense Instruction 13.1 (2003) (stating that 18 U.S.C. § 371, the general conspiracy statute, "makes it *a separate Federal crime or offense* for anyone to conspire or agree with someone else to do something which, if actually carried out, would amount to *another Federal crime or offense*") (emphasis supplied); *see also id*., Offense Instruction 87 (same language used in the context of an instruction pertaining to a conspiracy to commit a controlled substance offense under 21 U.S.C. §§ 846, 955c, or 963).

The RICO conspiracy statute was first explored in depth by the former Fifth Circuit's seminal opinion in *United States v. Elliott*, 571 F.2d 880 (5th Cir. 1978), where the court was faced with a massive criminal scheme involving six named defendants, thirty-seven unindicted co-conspirators, and over twenty different types of criminal activities, ranging from arson and murder to theft of shirts and meat.  The court noted that conviction was unlikely under traditional conspiracy concepts, which required proof of a "single agreement or common objective."  *See id*. at 902 ("In the context of organized crime, this principle inhibited mass prosecutions because a single agreement or 'common objective' cannot be inferred from the commission of highly diverse crimes by apparently unrelated individuals.").  As the *Elliott* Court noted, however, the RICO conspiracy statute was designed to facilitate prosecution

19

of multi-faceted, highly-diversified, criminal activity by creating a substantive offense

that possessed the capacity to tie-together diverse parties and crimes:

> RICO helps to eliminate this problem [of pleading and proving a "single agreement or common objective" in cases such as this one] by creating a substantive offense which ties together these diverse parties and crimes. Thus, the object of a RICO conspiracy is to violate a substantive RICO provision here, to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity *and not merely to commit each of the predicate crimes necessary to demonstrate a pattern of racketeering activity*. The gravamen of the conspiracy charge in this case is not that each defendant agreed to commit arson, to steal goods from interstate commerce, to obstruct justice, and to sell narcotics; *rather, it is that each agreed to participate, directly and indirectly, in the affairs of the enterprise by committing two or more predicate crimes*. Under the statute, it is irrelevant that each defendant participated in the enterprise's affairs through different, even unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs. To find a single conspiracy, we still must look for agreement on an overall objective. *What Congress did was to define that objective through the substantive provisions of the Act.*

*Id*. at 902-03 (emphasis supplied) (footnote omitted). In other words, the plaintiff in

the present case must allege (and ultimately prove) that the defendants, by their

"words and actions, . . . objectively manifested an agreement to participate, directly

or indirectly, in the affairs of [the Gold-Kist/Pilgrim's-Pride] enterprise through the

commission of two or more predicate crimes." *Id*. at 903. Stated differently, plaintiff

must allege (and ultimately prove) that defendants knowingly and willfully agreed to

become members of the conspiracy with the intention of participating in, and

furthering the affairs of, the Gold-Kist/Pilgrim's-Pride enterprise through a pattern of racketeering activity that included two or more violations of the immigration statutes cited previously.[20]

Although it is axiomatic that no *evidence* is required at the pleading stage, the complaint must contain *factual allegations* that reasonably appear to be capable of supporting the claimed conspiracy.[21]  As the Eleventh Circuit observed in *O'Malley*

---

[20] For the reasons discussed in the text preceding this marginal note, the court rejects defendants' assertion that proper pleading of the "conduct of an enterprise" element in this case requires plaintiff to allege that the RICO persons (*i.e.*, White and Thomas) shared a "common goal" or "common plan."  Moreover, as plaintiff notes, this requirement is quite sensibly limited to RICO cases in which the "enterprise" is not an existing legal entity, but an association-in-fact of various persons united by a common goal.  *See, e.g., Turkette*, 452 U.S. at 583 (defining the association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct"); *United States v. To*, 144 F.3d 737, 744 (11th Cir. 1998) ("The enterprise need not be a legal entity such as a corporation or partnership; it may also be 'a group of persons associated together for a common purpose of engaging in a course of conduct.'") (quoting *Turkette*, 452 U.S. at 583).  As the Fourth Circuit observed in *United States v. Griffin*, 660 F.2d 996 (4th Cir. 1981):

> We need not be concerned here, except for purposes of contrast, with the way in which the existence of a 'legal entity' RICO enterprise may be proved. . . . Neither the actual nor ostensible purpose of such an enterprise would seem directly relevant to proof of a RICO violation, just so long as it was shown that a defendant was associated with or employed by the legal entity and that the actual 'affairs' of the enterprise were being conducted by the requisite pattern of racketeering activity."

*Id*. at 999.  Here, plaintiff alleges that the "enterprise" is comprised of Gold Kist and Pilgrim's Pride, and that both defendants are (or were) employed by those legal entities.

[21] See Fed. R. Civ. P. 11(b)(3) (stating that when an attorney presents a pleading to the court, he "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery").

*v. O'Neill*, 887 F.2d 1557 (11th Cir. 1989), these allegations must be relatively specific, not vague or conclusory in nature.

> The district court dismissed . . . the RICO conspiracy count . . . because the allegations of a conspiracy were merely conclusory and unsupported by any factual allegations. We find that dismissal to be proper. The plaintiffs' complaint . . . allege[s] at most that some of the defendants knew about O'Neill's activities; there are no facts alleged that would indicate that they were willing participants in a conspiracy.

*Id*. at 1560 (internal citations omitted) (bracketed alteration supplied). *See also Goren*, 156 F.3d at 733 ("It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy.").[22]  As defendants see it, plaintiff's conspiracy allegations *are* conclusory and vague. This court agrees.

Plaintiff alleges that defendants, who both work exclusively at the Russellville processing facility, "are part of a conspiracy with other former and current Gold Kist and Pilgrim's Pride human resource personnel, at other locations, to implement and carry out the illegal-immigrant hiring scheme at each of Gold Kist and Pilgrim's

---

[22] *Cf. United States v. Harriston*, 329 F.3d 779, 785 (11th Cir. 2003) ("[T]he government can show an agreement to participate in a RICO conspiracy in one of two ways:  (1) by providing evidence that the defendant agreed to commit two predicate acts, or (2) by providing evidence that the defendant agreed to the overall objective of the conspiracy.") (emphasis in original); *United States v. Pepe*, 747 F.2d 632, 660 (11th Cir. 1984) ("The government need only prove that each defendant conspired to commit the substantive RICO offense and was aware that others had done likewise.") (emphasis supplied).

Pride's facilities nationwide."[23]   Plaintiff fails, however, to supply *any* factual allegations to support the legal conclusion that an agreement was reached by defendants White and Thomas with other, unnamed, human-resources personnel at other Gold Kist and/or Pilgrim's Pride facilities to commit at least two "predicate offenses," or that the defendants named in this complaint knew that unnamed individuals at other facilities had knowingly and willfully agreed to become members of the conspiracy with the intention of participating in, and furthering the affairs of, the Gold-Kist/Pilgrim's-Pride enterprise through a pattern of racketeering activity that included two or more violations of the immigration statutes cited previously.  *See Hernandez v. Balakian*, 480 F. Supp. 2d 1198, 1214 (E.D. Cal. 2007) (holding, in a similar situation, that "the allegations of conspiracy with unnamed entities and unnamed conspirators associated with those unnamed entities does not comply with notice pleading *and essentially allows Plaintiff to conduct a fishing expedition to substantiate these allegations*") (emphasis supplied).   *Cf. Aeropower*, *Ltd. v. Matherly*, 511 F. Supp. 2d 1139, 1153 (M.D. Ala. 2007) ("[T]he conclusory allegation that the defendants conspired with each other is insufficient to survive a motion to dismiss as Aeropower alleged no facts to show or to create a reasonable inference that the defendants made an agreement.").

---

[23] Doc. no. 1 (complaint) ¶ 23.

Indeed, plaintiff does not allege that White and Thomas knowingly and willfully agreed *with each other* to become members of the conspiracy with the intention of participating in, and furthering the affairs of, the Gold-Kist/Pilgrim's-Pride enterprise through a pattern of racketeering activity that included two or more violations of the immigration statutes cited previously, or even that either defendant *knew* of the other's participation or plan to participate.  The closest plaintiff comes to alleging awareness on the part of either defendant is when she states, in conclusory fashion, that *Paul Thomas* "knows that *Gold Kist* and *Pilgrim's Pride* are committing a massive immigration law conspiracy in order to maintain this workforce."[24]  This generic and factually hollow averment is not sufficient.  *See*, *e.g.*, *Oxford Asset Management v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (holding that a complaint cannot survive a motion to dismiss based solely on conclusory allegations).  Moreover, given plaintiff's allegation that Gold Kist and Pilgrim's Pride are the RICO *enterprises* — not the RICO *persons* — the allegation that those non-party entities are engaged in a conspiracy is nonsensical.

The rule within the Eleventh Circuit, however, is that a complaint generally should not be dismissed for failure to state a claim without allowing the plaintiff an opportunity to amend.  *See*, *e.g.*, *Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995)

---

[24] *Id*. ¶ 20 (emphasis supplied).

("Where a more carefully drafted complaint might state a claim upon which relief could be granted, the district court should allow the plaintiff [an opportunity] to amend the complaint rather than dismiss it.") (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.")).[25]

## C.   *racketeering activities*

As observed in note 12 *supra* and its accompanying text, RICO takes aim at so-called "racketeering activity" — a phrase that the Act defines as any act "chargeable" under several, generically described, *state* criminal laws,[26] and any act "indictable"

---

[25] Defendants' argument that the complaint is deficient because plaintiff does not identify the alleged co-conspirators is rejected.  This court can conceive of no reason why the validity of a civil conspiracy claim should depend upon the identification of the alleged co-conspirators when its criminal counterpart manifestly does not.  *See*, *e.g.*, *Rogers v. United States*, 340 U.S. 367, 375 (1951) ("Of course, at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as *one person can be convicted of conspiring with persons whose names are unknown*.") (emphasis supplied); *United States v. Booty*, 621 F.2d 1291, 1300 n.27 (5th Cir. 1980) ("[A] conspiracy indictment and a conspiracy charge to a jury may properly refer to unidentified co-conspirators.") (collecting cases); *United States v. LaFleur*, 669 F. Supp. 1029, 1035-36 (D. Nev. 1987) ("It does not appear that the Government is required to identify all coconspirators in order to allege the conspiracy count properly.  As long as the indictment asserts that the unidentified coconspirators exist, and the evidence offered at trial supports that assertion, the conspiracy is properly pled.").  *Cf. United States v. Pepe*, 747 F.2d 632, 659 (11th Cir. 1984) ("In proving a RICO conspiracy, the government does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive RICO crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy.").

[26] *See* 18 U.S.C. § 1961(1)(A) (defining "racketeering activity" as meaning, among other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion,

under numerous, specific, *federal* criminal statutes,[27] as well as any "offense" involving bankruptcy, securities fraud, or drug-related activities that is "punishable" under federal law.[28]  *See* 18 U.S.C. §§ 1961(1)(A) – (G).  The criminal statutes incorporated by reference in § 1961(1) are referred to in the case law construing RICO as "predicate offenses" (or, sometimes, "predicate acts").  *See*, *e.g.*, *Sedima*, 473 U.S. at 495 (stating that "'racketeering activity' consists of no more and no less than commission of a predicate act") (citing 18 U.S.C. § 1961(1)).

As previously noted, the plaintiff in this case relies upon that portion of § 1961(1) defining "racketeering activity" as

> any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) *if the act indictable under such section of such Act was committed for the purpose of financial gain* . . . .

18 U.S.C. § 1961(1)(F) (emphasis supplied).  Plaintiff alleges that defendants have violated 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(3)(A), two provisions that are embedded within § 274 of the Immigration and Nationality Act ("INA") and,

---

dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year").

[27] *See id.* §§ 1961(1)(B), (C), and (E) – (G).

[28] *See id.* § 1961(1)(D).

26

therefore, constitute "predicate offenses" that are cognizable under RICO.[29]  The first of these sections provides that:

> Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are [unauthorized] aliens [who have been brought into the United States with the assistance or encouragement of others, *see generally* 8 U.S.C. §§ 1324(a)(1)(A), (a)(3)(B)[30]]. . . shall be fined under Title 18, or imprisoned for not more than 5 years, or both.

8 U.S.C. § 1324(a)(3)(A) (bracketed text supplied).  Plaintiff alleges that defendants White and Thomas "violated this provision of the Act by conspiring to employ more than 10 undocumented, illegal aliens in each of the last four years, with actual knowledge each was brought into the country with some assistance by others during their journey."[31]

The other provision cited in plaintiff's complaint as a predicate offense, § 1324(a)(1)(A)(iii), makes it a federal crime or offense for anyone who either has

---

[29] *See* doc. no. 1 (complaint) ¶¶ 24-26.  In her complaint, plaintiff erroneously cites 8 U.S.C. § 1324(a)(1)(B)(3)(A), a provision that does not exist, instead of 8 U.S.C. § 1324(a)(3)(A).  *See id.* ¶ 24.  *See also* doc. no. 13 (plaintiff's brief in opposition to dismissal), at 13 n.9 (acknowledging the error).

[30] Section 1324(a)(3)(B) defines the term "alien" as any person who "(i) is an unauthorized alien (**as defined in section 1324a(h)(3) of this title**), **and** (ii) has been brought into the United States in violation of this subsection."  8 U.S.C. § 1324(a)(3)(B) (boldface emphasis supplied). Section 1324a(h)(3) in turn defines the "unauthorized alien" to mean, "with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General."  8 U.S.C. § 1324a(h)(3).

[31] Doc. no. 1 (complaint) ¶ 25.

actual knowledge "of the fact that an alien has come to, entered, or remains in the United States in violation of law," or anyone who acts "in reckless disregard of" that fact, to thereafter conceal, harbor, or shield from detection "such alien in any place, including any building or any means of transportation." 8 U.S.C. § 1324(a)(1)(A)(iii). Plaintiff alleges that White and Thomas violated this anti-harboring provision by "knowingly employing large numbers of illegal immigrants" and "assisting them [to] find housing and transportation."[32]

The major deficiency with plaintiff's allegations, according to defendants, is that 18 U.S.C. § 1961(1)(F) incorporates as "predicate offenses" only those violations of INA sections 274, 277, and 278 that were "*committed for the purpose of financial gain*." 18 U.S.C. § 1961(1)(F) (emphasis supplied); *see also Commercial Cleaning Services v. Colin Service Systems*, 271 F.3d 374, 379 (2d Cir. 2001) ("Colin's participation in the affairs of the enterprise through the illegal immigrant hiring scheme violates 8 U.S.C. § 1324(a), which prohibits hiring certain undocumented aliens, and which is a RICO predicate offense *if committed for financial gain*.") (emphasis supplied); *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006) (same); *Baker v. IBP, Inc.*, 357 F.3d 685, 687 (7th Cir. 2004) (same).

---

[32] *Id.* ¶ 26.

However, plaintiff does not allege that defendants White and Thomas, the RICO "persons," committed immigration law violations for *their own* financial benefit;[33] instead, she alleges that the RICO "enterprise" — Gold Kist and Pilgrim's Pride — benefitted financially from the violations of INA § 274 that were allegedly perpetrated by White and Thomas.  *See Zavala v. Wal-Mart Stores*, *Inc.*, 447 F. Supp. 2d 379, 383 (D. N.J. 2006) ("The language of the statute specifies that the 'person' commits the predicate acts[.]") (citing 18 U.S.C. § 1962(c)); *R.E. Davis Chemical Corp. v. Nalco Chemical Co.*, 757 F. Supp. 1499, 1507 (N.D. Ill. 1990) ("Within the RICO framework, 'persons' are the individuals or entities which commit the statutorily proscribed acts[.]").[34]

The question presented, then, is whether violations of INA § 274 are predicate offenses under § 1961(1)(F) if the RICO "persons" did not derive financial gain, but the RICO "enterprise" that employed those persons did profit from the violations? This court could find no reported cases addressing that issue, but a plain reading of the statutory language arguably encompasses a situation in which the RICO persons

---

[33] At oral argument, counsel for plaintiff represented to the court that he would feel comfortable including such an allegation in an amended complaint, but disputed the necessity of doing so.

[34] *Cf.* Paul A. Batista, *Civil RICO Practice Manual* § 5.06[B], at 5-24 (3d ed. 2008) ("Virtually all of the appellate courts require a separation between the 'guilty' person and the 'enterprise' if the civil racketeering claim is predicated on subsection (c) of § 1962, a section that interdicts a person's conduct of an enterprise through a pattern of racketeering activity.") (emphasis supplied) (footnoted citations omitted).

commit predicate offenses "for the purpose of" bestowing financial gain on the RICO enterprise.  *See generally*, *e.g.*, *Lewis v. Barnhart*, 285 F.3d 1329, 1331 (11th Cir. 2002) ("As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear.").  After all, RICO's "aim is to divest the association [*i.e.*, enterprise] of the fruits of *its* ill-gotten gains." *Turkette*, 452 U.S. at 585 (emphasis and alteration supplied).[35]

Nevertheless, drawing on *United States v. Zheng*, 306 F.3d 1080 (11th Cir. 2002), defendants describe this situation as a sort of "charity" crime scenario (*i.e.*, the persons violating the statute do so purely for the benefit of the enterprise), and question whether it makes any sense at all to include it within the scope of RICO. *Zheng* was not a RICO lawsuit, but a criminal case in which the defendants (two restaurant owners) were charged with providing room, board, and employment to several unauthorized aliens, violating, *inter alia*, 8 U.S.C. § 1324(a)(1)(B)(i) — a "section [that] provides for a ten-year imprisonment term for any person who knowingly harbors an illegal alien *for commercial advantage or private financial gain*." *Zheng*, 306 F.3d at 1085 (emphasis supplied).  The district court granted the

---

[35] In context, the Supreme Court observed that, "[a]s a general proposition, [RICO's] civil remedies could be useful in eradicating organized crime from the social fabric, whether *the enterprise* be ostensibly legal or admittedly criminal.  The aim is to divest the association of the fruits of its ill-gotten gains." *Turkette*, 452 U.S. at 585 (emphasis supplied).

defendants' motion for judgment of acquittal after trial, finding no evidence that they "harbored" unauthorized aliens for the purpose of commercial advantage or private financial gain. *Id*. at 1084. In so doing, the district court apparently accepted a reading of § 1324 that confined its application to individuals who are in the business of smuggling aliens into the United States for employment. *See id*. at 1085. After reviewing the relevant language, the Eleventh Circuit adopted a *broader* view of the statute and reversed, holding that it was sufficient for the government to prove that the defendants "provided both employment and housing for the illegal aliens *without any evidence that they did so 'out of any feelings of charity or affection.'*" *Id*. at 1086 (emphasis supplied) (quoting *United States v. Kim*, 193 F.3d 567, 577 (2d Cir. 1999)).

It appears to this court that White and Thomas have misconstrued *Zheng's* holding, and attempted to bootstrap themselves into the "charity or affection" category by arguing that, even if they violated the INA in the ways that plaintiff claims, they would have done so for the benefit of the RICO enterprise, and not for their own financial benefit. But the *Zheng* decision has nothing to do with the relationship between RICO enterprises and RICO persons. Indeed, *Zheng* has nothing to do with RICO at all. The extent of its holding is that violating the specified provisions of the INA results in criminal liability if the motivation for the violation was financial gain. The *Zheng* panel had absolutely nothing to say about

31

*who* must derive the financial gain (other than to indicate that the category of persons was not limited to professional smugglers), because in the context of a non-RICO criminal case, it is obvious that it must be the person who violates the statute.

*Zheng* is, in fact, doubly unhelpful for defendants, because it also defeats their second assault upon plaintiff's pleading of the predicate offenses. Defendants contend that plaintiff has failed to properly allege "harboring" of an unauthorized alien in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Roughly summarized, the anti-harboring provision makes it illegal for certain individuals possessing knowledge of an alien's unauthorized status (or acting in reckless disregard of that status) to conceal, harbor, or shield the alien from detection. *See id*. In her complaint, plaintiff alleges that both White and Thomas knowingly instructed their staff to hire unauthorized aliens, and that White "directed his staff to arrange for free temporary room and board for the illegal immigrant workers at local motels. He has also directed his staff to provide free transportation for illegal immigrant workers between their homes and work."[36]   As noted above, *Zheng* involved a violation of § 1324(a)(1)(A)(iii). *See* 306 F.3d at 1083. During the trial of that case, "[t]he Government showed that the [defendants] harbored the illegal aliens by providing both housing and employment." *Id*. at 1086. As the Eleventh Circuit saw it, this

---

[36] Doc. no. 1 (complaint) ¶ 22; *see also id.* ¶¶ 20, 21, 26.

housing and employment "facilitated the aliens' ability to remain in the United States illegally," and "prevented government authorities from detecting the illegal aliens' unlawful presence." *Id*. In light of this holding, the court rejects any argument that Hall's complaint fails to state a harboring violation.

The other predicate offense alleged in plaintiff's complaint is a violation of 8 U.S.C. § 1324(a)(3) which, as discussed above, provides that "[a]ny person who, during any 12-month period, knowingly hires for employment at least 10 individuals with *actual knowledge* that the individuals are *aliens described in subparagraph (B)* shall be fined under Title 18 or imprisoned for not more than 5 years, or both." 8 U.S.C. § 1324(a)(3)(A) (emphasis supplied). Subparagraph (B) defines the term "alien" as any person who "(i) is an unauthorized alien (*as defined in section 1324a(h)(3) of this title*), *and* (ii) has been brought into the United States in violation of this subsection." 8 U.S.C. § 1324(a)(3)(B) (emphasis supplied). Section 1324a(h)(3) in turn defines the term "unauthorized alien" as meaning, "with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General." 8 U.S.C. § 1324a(h)(3).

Much debate has been waged over the proper interpretation of § 1324(a)(3)(B)(ii). At least one court has held that "[t]his clause is *self-referential* and

thus difficult to interpret." *System Management*, *Inc. v. Loiselle*, 91 F. Supp. 2d 401, 408 (D. Mass. 2000) (emphasis supplied), *rev'd on other grounds*, 303 F.3d 100 (1st Cir. 2000). *Loiselle* is not binding authority, however, and it seems clear to this court that § 1324(a)(3)(B)(ii) references not just sub-sections 1324(a)(3)(A) or (B), as the *Loiselle* court held, but the entirety of the larger section of which those sub-sections are a part: *i.e.*, 8 U.S.C. § 1324(a). *Accord Williams v. Mohawk Industries*, *Inc.*, 314 F. Supp. 2d 1333, 1346 (N.D. Ga. 2004) ("Accordingly, the Court concludes that for a plaintiff to plead a violation of § 1324(a)(3) adequately, the plaintiff must simply allege that the aliens were *brought* into the United States in violation of subsection (a). . . .") (emphasis in original), *aff'd in part*, *rev'd in part on other grounds*, 465 F.3d 1277 (11th Cir. 2006). This makes sense because § 1324(a) sets forth various crimes related to the act of assisting unauthorized aliens to enter the United States. *See* 8 U.S.C. § 1324(a)(1)(A)(i) (prohibiting individuals from knowingly bringing an alien into the United States "at a place other than a designated port of entry"); *id*. at § 1324(a)(1)(A)(iv) (prohibiting individuals from knowingly or recklessly encouraging or inducing unauthorized aliens to come to or reside in the United States); *id*. at § 1324(a)(2) (prohibiting individuals from knowingly bringing unauthorized aliens to the United States "in any manner whatsoever").

Therefore, this court holds that the proper construction of sub-sections 1324(a)(3)(A) and (B) makes it unlawful for any person to hire ten or more individuals within a twelve-month period with actual knowledge that such individuals have entered the United States with some assistance or encouragement from another person, in violation of any relevant portion of 8 U.S.C. § 1324(a). A few other courts have been uncomfortable with this construction, however, because a separate section of the INA, 8 U.S.C. § 1324a(a)(1)(A), prohibits the hiring of unauthorized aliens, and the crimes described in that section are not predicate offenses for RICO purposes.[37] *See*, *e.g.*, *Zavala v. Wal-Mart Stores*, *Inc.*, 393 F. Supp. 2d 295, 308 n.11

---

[37] Section 1324a provides, in part, that:

**(1) In general** It is unlawful for a person or other entity—

> **(A)** to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3) of this section) with respect to such employment, or

> **(B) (i)** to hire for employment in the United States an individual without complying with the requirements of subsection (b) of this section or **(ii)** if the person or entity is an agricultural association, agricultural employer, or farm labor contractor (as defined in section 1802 of Title 29), to hire, or to recruit or refer for a fee, for employment in the United States an individual without complying with the requirements of subsection (b) of this section.

**(2) Continuing employment** It is unlawful for a person or other entity, after hiring an alien for employment in accordance with paragraph (1), to continue to employ the alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment.

8 U.S.C. § 1324a(a).

(D. N.J. 2005); *Loiselle*, 91 F. Supp. 2d at 409; *Trollinger v. Tyson Foods*, No. 4:02-CV-23, 2008 WL 413635, at *2 n.2 (E.D. Tenn. Feb. 13, 2008).  Those courts reason that, if plaintiffs need only allege knowledge that the alien was not authorized to work in the United States and received some assistance from others in entering the country, § 1324 "would duplicate the scope of 8 U.S.C. § 1324a, and thus open a backdoor to RICO for § 1324a-type claims."    *Trollinger*, 2008 WL 413635, at *2 n.2 (parenthetical omitted).  Accordingly, the courts in *Zavala*, *Loiselle*, and *Trollinger* held that a RICO plaintiff alleging a violation of § 1324(a)(3)(A) as a predicate offense must show that the defendant had actual knowledge of two facts:  the alien was unauthorized, and, the alien was brought into the United States illegally *for purposes of illegal employment*. *Zavala*, 393 F. Supp. 2d at 309; *Loiselle*, 91 F. Supp. 2d at 408; *Trollinger*, 2008 WL 413635, at * 2 n.2.  For two reasons, this court rejects that construction.

First, there is absolutely no textual basis for a requirement that the unauthorized alien be brought into the United States for purposes of illegal employment. *See generally Merritt v. Dillard Paper Co.*, 120 F.3d 1329, 1331 (11th Cir. 2002) ("In construing a statute we must begin, *and often should end as well*, with the language of the statute itself.") (emphasis supplied).  Section 1324 is completely silent as to *who* must bring the unauthorized alien into the country, and it does not

specify any particular *purpose* for the alien's entry.  These are alarming omissions if Congress truly intended to confine the statute's application in such a manner, and the court has no warrant to conclude that Congress made such critical mistakes.[38] Second, and relatedly, the Eleventh Circuit has held that "[a]lthough § 1324 and § 1324a appear to cover some of the same conduct, 'the fact that Congress has enacted two sections encompassing similar conduct but prescribing different penalties does not compel a conclusion that one statute was meant to limit, repeal, or affect enforcement of the other.'"  *Zheng*, 306 F.3d at 1085 (quoting *Kim*, 193 F.3d at 573). *See also id.* ("The Supreme Court has noted that statutes may 'overlap' or enjoy a 'partial redundancy,' and yet be 'fully capable of coexisting.") (quoting *United States v. Batchelder*, 422 U.S. 114, 118, 122 (1979)).

Plaintiff alleges that White and Thomas violated 8 U.S.C. § 1324(a)(3)(A) "by conspiring to employ more than 10 undocumented, illegal aliens in each of the last four years, with actual knowledge each was brought into the country with some assistance by others during their journey."[39]  She also describes in some detail the

---

[38] The first case in which this requirement was applied, *Loiselle*, cites neither statutory language nor other cases supporting it, and both *Zavala* and *Trollinger* simply ride *Loiselle*'s coattails, offering no better reason to impose such a stipulation.  The court is not persuaded by the reasoning of any of these non-binding cases.

[39] Doc. no. 1 (complaint) ¶ 25.

reasons supporting her claim of knowledge.[40]  Taken together, these allegations are plainly sufficient under this court's interpretation of sections 1324(a)(3)(A) and (a)(3)(B)(ii).  *Accord Williams I*, 314 F. Supp. 2d at 1346 ("Turning to the Complaint, the Court concludes that Plaintiffs have pleaded adequately the elements of § 1324(a)(3).  Specifically, Plaintiffs have alleged that Defendant has hired illegal workers knowing that those workers were 'smuggled or otherwise brought' into the United States illegally."); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) (same).  Thus, the court finds that plaintiff has adequately pleaded predicate acts under RICO.

**D**.     ***a pattern of racketeering activity***

RICO "requires at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity," to constitute a "pattern" of racketeering activity.  18 U.S.C. § 1961(5).  As the Supreme Court observed in *Sedima*, *S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985), however, two of anything hardly forms a "pattern":

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in §

---

[40] *Id.* ¶¶ 17, 20-22.  It should be noted that Fed. R. Civ. P. 9(b) provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, *knowledge*, and other condition of mind *may be averred generally*." Fed. R. Civ. P. 9(b) (emphasis supplied).

1961 in that it states that a pattern "*requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S. Rep. No. 91-617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship. . . . So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern. . . ." 116 Cong. Rec. 18940 (1970) (statement of Sen. McClellan). *See also id.*, at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S. Ct. 1284, 1295, 43 L. Ed. 2d 616 (1975).

*Sedima*, 473 U.S. at 496 n.14 (emphasis in original).

Plaintiff alleges that defendants White and Thomas conspired to employ more than ten unauthorized aliens in each of the last four years, with actual knowledge that those aliens were brought into this country with some assistance from others, in

39

violation of 8 U.S.C. § 1324(a)(3)(A).[41]   Further, plaintiff claims that White and

Thomas "harbored" unauthorized aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii).

Clearly, these allegations are sufficient to satisfy the Supreme Court's requirements

for establishing a "pattern" of racketeering activity, and defendants do not contend

otherwise.

E.    *injury to the plaintiff's business or property*

A civil RICO plaintiff also must allege "an injury to the plaintiff's business or

property" that occurred "by reason of" the substantive RICO violations.  18 U.S.C.

§ 1964(c).[42]   Here, plaintiff alleges that "[t]he Illegal Immigrant Hiring Scheme, by

itself, was a substantial factor in causing the depressed wages about which Hall and

the Class complain."[43]

The Eleventh Circuit held in an action very much like the present one, *Williams*

*v. Mohawk Industries*, *Inc.*, 465 F.3d 1277 (11th Cir. 2006) — a case in which current

or former hourly employees of the second largest carpet and rug manufacturer in the

United States brought a class action alleging that their employer's widespread and

---

[41] Doc. no. 1 (complaint) ¶ 25.

[42] 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

[43] Doc. no. 1 (complaint) ¶ 31.

40

knowing employment and harboring of illegal aliens had allowed it to reduce labor

costs by depressing wages for its legal hourly employees — that such injuries clearly

qualify as a "business interest" under RICO.   In reaching that conclusion, the

Eleventh Circuit panel observed that the *Williams* case was

> similar to the Ninth Circuit's *Mendoza* decision [*i.e.*, *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002)], where legally documented agricultural workers sued fruit growers under RICO alleging that the growers depressed wages by hiring illegal workers.  In *Mendoza*, the defendant claimed that the employees would have to show a "'property right' in the lost wages[ ] by showing that they were promised or contracted for higher wages." *Mendoza*, 301 F.3d at 1168 n.4.  The Ninth Circuit concluded that this argument was misplaced, pointing out that the plaintiffs' claim did not implicate procedural due process. *Id*. Rather, the Ninth Circuit concluded that "what is required is precisely what the employees allege here:  a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *Id*. (citations omitted).  Given that a relationship clearly exists between plaintiff workers and their employer, Mohawk, we conclude that a similar business interest exists in this case, and that the employees' alleged injury to their business interests satisfies the business-interest requirement.  Consequently, the plaintiffs have alleged a sufficient injury to a business interest to pursue their RICO claims.

*Williams*, 465 F.3d at 1286-87.  Because of the inherent similarity between this case

and *Williams*, there is no need for further elaboration.  Stated simply, the injuries

about which plaintiff complains are obviously injuries to her (and the prospective

class members') "business interests."

**F**.   ***proximate cause***

The Supreme Court has twice emphasized that civil RICO plaintiffs must prove that their injuries were proximately caused by the RICO violation. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S. Ct. 1991, 1999 (2006) (holding that "a claim is cognizable under [18 U.S.C.] § 1964(c) only if the defendant's alleged violation proximately caused the plaintiff's injury"); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (same). *See also Williams*, 465 F.3d at 1287-88 ("Although *Anza* does not require plaintiffs to show that the injurious conduct is the sole cause of the injury asserted, *Anza* does emphasize that in RICO cases there must be "some direct relation" between the injury alleged and the injurious conduct in order to show proximate cause.") (citation and footnote omitted).[44]

Moreover, "consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an 'ac[t] of a tortious character,' meaning *an act that is independently wrongful under RICO*." *Beck v. Prupis*, 529

---

[44] In the omitted footnote, the Eleventh Circuit panel in *Williams* observed that, in its *Anza* opinion, the Supreme Court explained that

> "Congress modeled § 1964(c) [in the RICO statute] on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act." 126 S. Ct. at 1996 (quotation marks and citation omitted). In both federal RICO and federal antitrust cases, "proximate cause is not . . . the same thing as a sole cause," and it is enough for the plaintiff to plead and prove that the defendant's tortious or injurious conduct was a "substantial factor in the sequence of responsible causation." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (RICO), *modified on other grounds* by 30 F.3d 1347 (11th Cir. 1994).

*Williams*, 465 F.3d at 1288 n.5.

U.S. 494, 505-06 (2000) (alteration in original, emphasis supplied, and citations omitted). Plaintiff alleges that *the conspiracy* to hire unauthorized aliens was, "by itself, . . . a substantial factor in causing the depressed wages about which Hall and the [putative] Class complain."[45] This will not do. Instead, plaintiff must allege that she (and members of the proposed class) suffered injury as a proximate result of the "independently wrongful [acts] under RICO," *id.* (bracketed text supplied) — *i.e.*, the predicate violations of INA § 274. *See id.*; *Williams*, 465 F.3d at 1283 (holding that "civil RICO claimants . . . must show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' *the substantive RICO violation*") (emphasis supplied). *Cf. Price v. Pinnacle Brands*, *Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Section 1964(c) requires that a compensable injury be 'by reason of' the defendants' substantive violations — here, Pinnacle's alleged illegal gambling.").

Since defendants do not quibble with the proposition that Hall could have suffered an injury as a proximate result of their alleged INA § 274 violations, it appears this error in pleading can easily be corrected by an amended complaint. On the other hand, defendants deny that any violations of INA § 274 committed by them in Russellville, Alabama could proximately cause injury to the members of the as-of-now-uncertified, putative class, each of whom worked at other poultry processing

---

[45] Doc. no. 1 (complaint) ¶ 31.

plants across the nation.  As defendants see it, those putative class members at other processing facilities are not affected by decisions made at the Russellville plant; therefore, there is no proximate connection between the activities at that plant and wage depression at other plants.  In support of this contention, defendants cite the Eleventh's Circuit's intimations in *Williams* that particularly difficult proximate causation issues may be presented where a plaintiff alleges nationwide injury, but only provides facts sufficient to show a localized conspiracy.  *See* 465 F.3d at 1290 ("Moreover, plaintiffs are not suing about the hiring of illegal workers on the west coast depressing the wages of legal workers on the east coast.  Rather, plaintiffs' complaint is a narrow one about a single employer's — Mohawk's — hiring of thousands of illegal workers at its manufacturing facilities in north Georgia depressing the wages of legal workers of the same employer, Mohawk, at the same manufacturing facilities in the same limited geographical area.").

This court shares the concerns articulated by the panel in *Williams*.  This, however, is not the time to address injury to members of the proposed class, because the proposed class has not yet been certified.  Therefore, the court will permit discovery to proceed one step at a time:  *i.e.*, discovery initially will be limited to those facts (if any) substantiating plaintiff's allegations of a RICO conspiracy at the Russellville, Alabama Pilgrim's Pride facility.  Only if there is evidence to support

the conspiracy at that locale will the court permit plaintiff to investigate activities at other plants.  If questions as to the sufficiency of plaintiff's allegations of injury to the putative class members remain at the class certification stage, the court will address those questions at that time.

### IV.  CONCLUSION

Plaintiff must file an amended complaint supplying factual allegations to support the legal conclusion that an agreement was reached by defendants and some other some unnamed human resources personnel at other Gold Kist and/or Pilgrim's Pride facilities to commit at least two "predicate acts," or, that the defendants named in this complaint knew that unnamed individuals at other facilities aspired toward the same illegal objective.  Additionally, plaintiff must specifically allege injury as a result of the predicate acts in the amended complaint.

An appropriate order will be entered contemporaneously herewith.

DONE this 11th day of March, 2008.

_____
United States District Judge

45